# Dancy, *et al. v.* Alabama Power Co., *et al.*

### Bill to Enjoin Trespass.

(Decided November 16, 1916. Rehearing denied January 18, 1917.
73 South. 901.)

1. **Eminent Domain; Trespass.**—Equity will enjoin a corporation empowered to exercise the right of eminent domain when it is proceeding to take or injure land for its own use without the consent of the owner and without legal proceedings to subject it to its own use; and this is true notwithstanding the general principles that equity will not enjoin trespasses where the rights of the parties are legal and adequate relief can be afforded by a court of law.

2. **Same; Entry for Survey.**—The rights given by § 3493, Code 1907, are based on the sovereign power to take, injure or destroy the property of others through its appropriation and devotion to the public use.

3. **Same; Statute; Examination; Survey.**—In view of the provisions of §§ 23 and 235, Constitution 1901, § 3493, Code 1907, must be construed as not authorizing the taking, injuring or destroying of property in the exercise of the power of eminent domain but as authorizing only a prelimniary examination and survey with only such damages as must be necessarily inflicted by the entry and movements of surveyors and their instruments with the least possible injury.

4. **Same; Statute.**—Such section gives the right of entry, examination and survey to persons only and this right is not to be exercised by or with animals or vehicles.

5. **Same; Damages.**—The provisions of § 3493 contemplate the payment of damages consequent upon the entry for examination and survey only

[Dancy, et al. v. Alabama Power Co., et al.]

after they have been inflicted by such examination and survey as is authorized by the statute.

6. **Constitutional Law; Statute; Construction.**—If it is possible to do so, statutes must be so construed as to avoid invalidity.

Heard before Hon. JAMES E. HORTON, JR.

Bill by Unity D. Dancy and others against the Alabama Power Company and others to restrain trespass to land and for damages. From decree sustaining demurrers to the bill complainants appeal. Reversed and remanded.

E. W. GODBEY, for appellants. THOMAS W. MARTIN and EYSTER & EYSTER, for appellees.

MCCLELLAN, J.— (1) "Notwithstanding the general principle that a trespas upon lands will not be enjoined in equity where the rights of the parties are legal and adequate relief can be afforded by a court of law, yet it is well settled that the courts of chancery will enjoin a corporation empowered to exercise the right of eminent domain when it is proceeding to take or injure land for its uses without consent of the owner and without legal proceedings to subject it to such use."—*M. & M. Ry. Co. v. Ala. Mid. Ry. Co.*, 123 Ala. 145, 160, 26 South. 324, 327; *So. Ry. Co. v. Hays,* 150 Ala. 212, 215, 43 South. 487.

Code, § 3493, provides: "Railroads, street railroads, and mining, manufacturing, power, and quarrying, telegraph and telephone, and other corporations having rights and powers to condemn, may cause such examinations and surveys for their proposed railroads, or lines, as may be necessary to the election of the most advantageous routes and sites, and for such purpose may, by their officers, agents, and servants, enter upon the lands and waters of any person, but subject to liability for all damages done thereto, and may, in the construction of their lines or sites, cross navigable streams, but must not impede the navigation thereof; may use, cross, or change public roads, when necessary, in the construction of their railways, switches, branches, lines, or buildings, and must place the public road so crossed, used, or changed, in condition satisfactory to the county authorities having the control thereof, but where practicable the railroads must go over or under the public roadway, or railroad track, and may also cross or intersect with any other railroad or street railway, and if such crossing or intersection cannot be made by contract or

agreement, may acquire the rights thereto by condemnation in the mode provided by law."

(2) It is manifest from the plain terms employed in the statute as well as from the purpose it would subserve and effect that the rights therein conferred are predicated of the sovereign power to take, to injure, or to destroy the property of others through its appropriation and devotion to a public use. In *Ala. Inter. Power Co. v. Mt. Vernon, etc., Co.,* 186 Ala. 622, 650, 65 South. 287, 295, of this statute it was said: "The temporary right, and consequent limited immunity (*State v. Simons,* 145 Ala. 95, 40 South. 662), conferred by this statute, is necessarily incident to, and preliminary of, authorized proceedings to condemn, instituted by the entities mentioned therein. Manifestly the right thereby established is not conditioned—otherwise than upon an authoritative prerogative to exercise the power of eminent domain—upon any other contingency than that the corporations mentioned shall have in contemplation (not already instituted) proceedings to exercise the rights and powers to condemn. The obvious purpose of the statute was to allow preparatory, preliminary investigations and surveys in order to properly prepare for, and to intelligently invoke, condemnation proceedings. The right conferred is valuable and essential to the object it has in view."

In *State v. Simons,* 145 Ala. 95, 40 South. 662, it was held that the statute (section 3493) did not contemplate or intend to attempt to authorize a taking of property; the reason being that the rights thereby created and asserted were of a temporary character only—an entry for a preliminary purpose solely. The rule of that decision was followed in *Ala. Inter. Power Co. v. Mt. Vernon Co., supra.* In neither of those decisions was there considered by this court any question relating to a substantial injury to or destruction of property in or about the process of making the "examinations and the surveys" prescribed in the statute. In those decisions the rulings here pertinent were predicated on the assumption that the statute (section 3493) only authorized a preliminary entry to make "examinations and surveys" with the view to the discovery and ascertainment of the better, the more feasible route for the way to be condemned.

(3-5) Limitations upon the power of eminent domain by the state and upon the authority of corporations and individuals to serve as instruments or agents for the exercise of the power of

eminent domain are set forth in sections 23 and 235 of the Constitution of 1901.—*Duy v. Ala. Western Ry. Co.*, 175 Ala. 162, 173, 174, 57 South. 724, Ann. Cas. 1914C, 119. We are here pertinently concerned with these provisions of section 235: "Municipal and other corporations * * * invested with the privilege of taking property for public use, shall make just compensation, * * * for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction."

The statute under consideration was not drawn to authorize the taking, the injury, or the destruction of property in the exercise of the power of eminent domain. If it was interpreted as so intending, the result would be to require the pronouncement that it was violative of section 235 of the Constitution, and hence was invalid when enacted. It does not purpose to assure the payment of "compensation * * * before such taking, injury, or destruction." The provision therein for the payment of damages, consequent upon the entry for "examinations and surveys" of the land contemplates only the satisfaction of the demands for damages after they have been inflicted by the "examinations and surveys" authorized by the statute. This statute, as is the judicial obligation with respect to all other enactments, must, if reasonably possible, be so construed as to avoid its invalidity. The rights created by the statute are to enter for an examination and survey of the land over which the corporation contemplates the later condemnation of the "most advantageous routes and sites" for its works, ways, improvements, or structures. The rights of entry, examination, and survey are to be exercised by persons only, not by or with animals or vehicles; the statute only conferring these rights upon "officers, agents or servants." It is plain that the object the statute would subserve can be fully and only accomplished by the view of persons representative of the corporations described therein. The terms "examinations" and "surveys," as employed in the statute, have only the ordinary signification attributed to them by the lexicographers. As indicated before, the statute does not undertake to authorize any permanent injury to or destruction of the land (and standing timber is land in legal contemplation) by the exercise of the limited rights created by the statute. All that the statute contemplates—all that it could validly contemplate—

in respect to damage consequent upon the entry and examinations and surveys on the land is such as is inflicted necessarily by the entry and movement of surveyors over the land and in the efficient use of their instruments to effect the purpose in view. This may include the tramping down of herbage and the minimum of injury to growing crops; but in no event can it rightfully include the injury or destruction of any form or character or amount of growing trees or timber. If the purpose of the entry cannot be effected within the limited, the defined, rights created by the statute, it must be foregone.

It appears from the averments of the bill that the Alabama Power Company, an institution lawfully authorized to exercise the right of eminent domain in this state (*Ala. Inter. Power Co. v. Mt. Vernon Co.,* 186 Ala. 622, 65 South. 287) had abused or exceeded the rights conferred by section 3493 (quoted above) in and upon the lands of the complainants before the bill was filed, and was about to further exceed the rights conferred by the statute when the injunction was issued. The complainants were entitled to have the writ of injunction issued to restrain the company or its agents from the further threatened injury of their lands through the cutting of timber and the destruction of growing crops beyond that necessary to effect the examinations and surveys clearly essential to the "selection of the most advantageous routes and sites" for their enterprise or structures. The chancellor therefore erred in sustaining the respondents' (appellees') demurrer to the bill. It should be observed that many allegations of the bill with respect to damages consequent upon the erection of an electric power line could only become of interest at the hearing of a proceeding to condemn. See *Ala. Power Co. v. Keystone Lime Co.,* 191 Ala. 58, 67 South. 833; *Ala. Power Co. v. Carden,* 189 Ala. 384, 66 South. 596; *Ala. Cent. Ry. Co. v. Musgrove,* 169 Ala. 424, 53 South. 1009.

The decree sustaining the demurrers is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.